JODI LINKER
Federal Public Defender
Northern District of California
CANDIS MITCHELL
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:  (415) 436-7706
Email:  Candis_Mitchell@fd.org

Counsel for Defendant Archaga Reyes

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **United States of America,** | **Case No.:** CR 22–082 CRB |
| Plaintiff, | **Defendant's Sentencing Memorandum** |
| v. | |
| **Dixis Archaga Reyes,** | **Hearing Date:**  January 4, 2023 |
| Defendant. | **Hearing Time:**  10:00 a.m. |

    Defendant Dixis Archaga Reyes, through undersigned counsel, respectfully offers the following memorandum supporting his request for a 12 months and one day sentence of imprisonment.

    The sentence is appropriate because: (1) the § 3553(a) factors militate for a substantially reduced sentence, (2) Mr. Archaga Reyes will have additional custodial time following his criminal case as he awaits deportation to Honduras, and (3) to prevent unwarranted sentencing disparity between other street level dealers arrested and sentenced locally.

## THE APPLICABLE 3553(A) FACTORS

**1. The nature and circumstances of the offense and the history and characteristics of the defendant;**

Born and raised in Honduras, Mr. Archaga Reyes grew up in extreme poverty. His family worked the land surrounding their ramshackle house. Growing up with his four other siblings, their room home lacked both electricity and running water. To have daily water, the family had to trek to the nearest river and to take the water back to their home in buckets to use for drinking, washing, and cleaning.[1]

He grew up with neither a steady source of sufficient food nor the ability to possess needed clothing. As a child, he had one set of clothes to wear throughout the week.[2] On wash days, that set of clothing would be cleaned using the river water, dried, and then re-worn for the following week. The family's poverty was so extensive, he did not receive his first pair of shoes until he was 10.[3] His days were spent shoeless and eating mostly what families could grow and share in his small village. When the family didn't have enough, they depended on handouts from the community.[4] Despite the difficulties of working the land, his family considered it honest and good work.

Because he left school at third grade, he cannot read or write well in either Spanish or English. After leaving school, he did any work he could to help support his family—including toiling long hours in agricultural fields and doing manual labor.

It is little wonder that shortly before he reached adulthood, Mr. Archaga Reyes found himself atop a train slowly travelling from Honduras through Central America to Mexico and then eventually on foot to cross the border into the United States.

//
//
//
//

---

[1] PSR ¶ 49.
[2] PSR ¶ 48.
[3] PSR ¶ 49.
[4] PSR ¶ 48.

DEF.'S SENT. MEMO.
*ARCHAGA REYES*, CR 22–082 CRB



**Image 1.** Migrants arrive at a rest stop in Ixtepec, Mexico, after a 15-hour ride through Mexico. Thousands of migrants ride atop the trains, known as *La Bestia,* or The Beast, during their long and perilous journey through Mexico to the U.S.[5]

Since 2013, widespread insecurity, poverty, and high levels of violence have displaced many people within and beyond Honduras borders. It is estimated that at least 247,090 Hondurans (2.7% of the population) have been internally displaced between 2014–2018. As for international displacement, from 2018–2021, at least 250,978 Hondurans were deported from other countries back to Honduras. This number provides an indication of how many people left Honduras in the past two years. The COVID-19 crisis additionally had a severe impact on food security, particularly in Central America. Previously, basic grains had maintained low and stable prices thanks to the recent harvest season, but the COVID-19 emergency led to massive purchases and higher prices

Whether caused by gangs, an ineffective government, drug trafficking, or poverty, Honduras has claimed the title of "murder capital of the world."[6] The government suffers from corruption and

---

[5] *John Moore/Getty Images.* Taken from Sayre, Wilson, "Riding 'The Beast' Across Mexico To The U.S. Border" Parallels (June 4, 2014). Accessed at:
https://www.npr.org/sections/parallels/2014/06/05/318905712/riding-the-beast-across-mexico-to-the-us-border

[6] United States Department of State Bureau of Diplomatic Security. Honduras 2018 Crimes and Safety Report, (April 3, 2018). Accessed at:
   https://www.osac.gov/Pages/ContentReportDetails.aspx?cid=23798

DEF.'S SENT. MEMO.
*ARCHAGA REYES*, CR 22–082 CRB

has lost international funding after allegations of human rights abuse.[7] Honduras is hard on its citizens and harder still on people like Mr. Archaga Reyes who lack the education or money to change his place in the world. The corruption does not end with the government. There are also allegations of gang infiltration of their police force.[8]

  Desperate to change his future and lacking the opportunity to do so in his small village, Mr. Archaga Reyes took the chance and travelled—eventually ending up in Georgia and Northern California—to help his family.

  After he arrived in the United States, he initially worked intermittently as a day laborer and doing auto body work. While he was working steadily, he would send all of his spare money home to his family to support his parents and his children. So long as he was steadily working, Mr. Archaga Reyes met his obligations for his own welfare and his family. However, when his employment dried up or slowed down, Mr. Archaga Reyes sold drugs to make up the gap between what his expenses were and what he could cover with the little work he was getting. His arrest was a result of his trying to make up funds to bridge the gap between what he could earn to support himself and what his family needed.

**2. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to punish the offense; The need for the sentence imposed to afford adequate deterrence to criminal conduct; The need for the sentence imposed to protect the public from further crimes of the defendant;**

  Mr. Archaga Reyes is a street level dealer whose amalgamated sales to an undercover officer increased his guideline range. Considering the small amounts of drugs involved in the individual sales, a 12 months' and a day sentence is appropriate, given the totality of the circumstances and, thus, reflects the seriousness of the offense, promotes respect for the law, punishes the offense, and serves as an adequate deterrence to criminal conduct. In this case, the November 2, 2021, sale was for 1 gram of methamphetamine and 1.9 gram of heroin. The December 7, 2021, sale was for 3.9 grams of

---

[7] Khan, Carrie, "Honduras Claims Unwanted Title of World's Murder Capital" Parallels (June 12, 2013). Accessed at: https://www.npr.org/sections/parallels/2013/06/13/190683502/honduras-claimsunwanted-title-of-worlds-murder-capital

[8] *Id.*

DEF.'S SENT. MEMO.
*ARCHAGA REYES*, CR 22–082 CRB

methamphetamine and 30.9 grams of fentanyl. After the smaller sales, the undercover officers then started asking Mr. Archaga Reyes for greater amounts of drugs that greatly increased his guideline range. Had he been arrested and federally prosecuted during his first sales, his guidelines would have been much lower than after his December 22nd and February 4th sales.

Mr. Archaga Reyes will be deported following the conclusion of his sentence and it is unlikely that he will repeat his actions. The public faces little risk of harm from further crimes once he is deported.

**3. The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

Mr. Archaga Reyes has yet to complete an elementary education and primarily speaks Spanish. Any sentence likely would not legitimately provide him sufficient time in custody for him to acquire language skills that would permit him to attain a high school education or complete vocational training while in custody—especially given the reductions of inmate movements accompanying the preventive measures to halt the spread of COVID-19.[9] While Mr. Archaga Reyes is a motivated individual with the ability and desire to improve himself, he cannot avail himself of similar programming due to COVID restrictions.

**4. The sentences available;**

Here, the Court may impose any sentence a minimum sentence of five years' imprisonment up to 40 years imprisonment. The Court can impose a minimum of four up to a life-time supervised release, a $5,000,000 fine, and a $400 special assessment for all the counts.

//
//
//
//
//

---

[9] https://www.bop.gov/coronavirus/covid19_status.jsp

DEF.'S SENT. MEMO.
*ARCHAGA REYES*, CR 22–082 CRB

**5. The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant in the guidelines**

    5.1.  Mr. Archaga Reyes's Proposed Guideline Calculations

| | |
|---|---|
| Base Offense Level, USSG § 2D1.1 | 30 |
| Acceptance of Responsibility, USSG § 3E1.1(a) & (b) | −3 |
| Total Offense Level | 27 |
| Mr. Archaga Reyes's Recommendation | 12 months and a day[10] |
| Probation's Recommendation | 60 months |
| Governments' Recommendation | 71 months |

**5.2. The Court Should Adjust Downward Three Levels for Acceptance of Responsibility**

Under U.S.S.G. § 3E1.1, the Court should depart three-levels because Mr. Archaga Reyes accepted responsibility for his involvement in the present offense as demonstrated by his guilty plea and his truthful admission of the conduct comprising the offense.

**6.  Any pertinent policy statement**

While Mr. Archaga Reyes would generally encourage the Court to not impose supervised release for individuals like Mr. Archaga Reyes who will deported after their sentence, he recognizes that supervision must be imposed due to the statute conviction.

**7.  The need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct**

While the requested sentence is a departure from the guideline range, the departure is *de minimis* when considering the conduct and the additional time Mr. Archaga Reyes will spend in immigration custody before his deportation. Additionally, the sentence is in accord with similarly situated defendants engaged in similar conduct swept up for similar conduct during the Tenderloin

---

[10] Mr. Archaga Reyes understands that he faces a minimum mandatory of 60 absent successful completion of safety valve. He anticipates successfully completing safety valve the first week of January. If safety valve were met, his guideline range would be 25 at CHC I, at 57-71 months.

Drug initiative.

The table below summarizes sentences received in several cases with individuals facing similar charges to Mr. Archaga Reyes and arrested as for hand to hand sales in the Tenderloin. As the table shows, many were undocumented and had previous convictions for prior drug sales—unlike Mr. Archaga Reyes who has only one conviction—and all received below-Guideline sentences.

8.

| Name | Case No. | Drug | CHC | USSG Range | Sentence | Priors |
|---|---|---|---|---|---|---|
| Aaron Servellon | 19-689-RS | Crack, heroin, meth, fentanyl | I | 12-18 | 102 days | |
| Anival Ramos-Velasquez | 19-503-EMC | Heroin, crack | I | 6-12 | 111 days | |
| Arnold Cruz Rodriguez | 19-381 CRB | Heroin, Methamphetamine (Pure) | I | 87-108 | 13 months | |
| Arnulfo Estrada | 19-00546 CRB | | I | 18-24 | 4 months, 6 days | |
| Brayan Arteaga | 19-426-WHO | Crack | II | 8-14 | 37 days | |
| Cesar Lopez | 19-482 CRB | Fentanyl, Heroin, Methamphetamine (Mix) | I | 10-16 | 7 months | |
| Corey Wyatt | 19-396-RS | Alprazolam | VI | 6-12 | 99 days | Involuntary manslaughter, assault with deadly weapon |
| David Lopez Mejia | 19-661-VC | Crack | III | 15-21 | 125 days | 2 drug sales |
| David Medina-Guerrero | 20-26-RS | Crack | III | 10-16 | 83 days | |
| Freddy Javier Reyes | 19-528 CRB | | IV | 15-21 | 8 months | |
| Ismael Martinez | 19-650-RS | Crack, meth | I | 0-6 | 48 days | |
| Jesus Flores | 19-429-SI | Cocaine, heroin, meth | I | 10-16 | 118 days | 2 deports |
| Jose Arteaga Vasquez | 19-287 CRB | Cocaine, Heroin | I | 57-71 | 13 months | |
| Jose Ramos-Varela | 19-713-EMC | Meth | I | 10-16 | 57 days | |
| Jossan Ariel Martel-Carcamo | 19-497 CRB | Crack, Fentanyl, Heroin, Methamphetamine (Mix) | II | 15-21 | 13 months | |

| Name | Case | Drug | CHC | Range | Sentence | Notes |
|---|---|---|---|---|---|---|
| Kelier Velasquez-Jossel | 19-483-EMC | Crack | I | 6-12 | 125 days | |
| Luis Vargas-Valle | 19-386-RS | Crack | II | 8-14 | 6 months | 32 month illegal reentry sentence |
| Marco Velasquez-Trinidad | 19-456-WHO | Crack | I | 6-12 | 120 days | |
| Pedro Muncia | 19-428-CRB | Heroin, crack, meth | II | 8-14 | 126 days | Federal drug case, deport |
| Ristir Trejo | 19-535-RS | Fentanyl, crack, heroin | II | 21-27 | 140 days | |
| Ronny Dixson | 19-527-WHO | Heroin | III | 18-24 | 12 months + 1 day | 8 drug felonies, including sales |
| Santos Aguilar | 19-454-VC | Heroin, meth | II | 15-21 | 152 days | Illegal reentry |
| Welbur Cardona-Navarro | 19-541-WHO | Heroin, crack | III | 24-30 | 12 months + 1 day | 2 illegal entries |
| Wilfredo Cabrera | 19-452-WHO | Heroin | II | 8-14 | 132 days | 4 year drug sentence; 6 deports |
| Wilson Acosta-Valle | 19-560-VC | Crack, heroin | II | 8-14 | 111 days | Federal drug case |
| Yerlyn Cruz-Ortiz | 19-453-SI | Crack | V | 21-27 | 15 months | On supervised release for illegal reentry |

Here, Mr. Archaga Reyes had a limited function and limited involvement—he was a street level dealer who reached out to friends to fill the larger orders requested by the undercovers. He had no ability to dictate the price or terms of the sale. He generally picked up his wares and sold it and made little money a day. He should be sentenced accordingly.

**9. The need to provide restitution to any victims of the offense.**

There is no need for an order of restitution.

//
//
//
//

DEF.'S SENT. MEMO.
*ARCHAGA REYES*, CR 22–082 CRB

8

**CONCLUSION**

The facts before the Court establish compelling reasons to impose a sentence below the guideline range. Mr. Archaga Reyes requests that the court sentence him to 12 months and 1 day.

//
//
//
//

Dated:     December 28, 2022

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

            /S
CANDIS MITCHELL
Assistant Federal Public Defender